O

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

VU NGUY, an individual,

        Plaintiff,

      v.

LAPSON LUU, aka BE TI, an individual;
BETI CHANNEL SHOPS, LLC, a California limited liability Company; and
TOTAL ELITE FINANCIAL AND INSURANCE SERVICES, a California corporation,

        Defendants.

Case No. 8:22-cv-01203-JWH-DFM

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS [ECF No. 19]**

Plaintiff Vu Nguy is an online political commentator—allegedly well-known in the Vietnamese community—living here in the United States.[1] Nguy has worked in radio broadcasting for years, and he currently hosts a daily online show in which he discusses politics, international relations, and matters concerning the Vietnamese diaspora.  Nguy also sells personal care products tied to his side business, non-party NV Foundation.[2]

Nguy filed this lawsuit against his former co-host, Defendant Lapson Luu, and her associated businesses, Defendants Beti Channel Shops, LLC ("BCS") and Total Elite Financial and Insurance Services ("TEFI").  Nguy asserts five claims for relief for libel.[3]  Specifically, Nguy alleges that Luu worked with Nguy for 18 months, then she started her own YouTube channel.  Luu thereafter launched a series of attacks on Nguy's reputation in an effort to divert business away from Nguy and to sell more of Luu's own consumer products.[4]

Before the Court is Defendants' motion to dismiss Nguy's Complaint.[5]  The Court finds this matter appropriate for resolution without a hearing.  *See* Fed. R. Civ. P. 78; L.R. 7-15.  After considering the papers filed in support and in opposition,[6] the Court orders that Defendants' Motion is **DENIED**, for the reasons set forth herein.

---

[1]     Compl. (the "Complaint") [ECF No. 1] ¶ 3.

[2]     *Id.* at ¶¶ 13-15.

[3]     *Id.* at ¶¶ 5-12.

[4]     *Id.* at ¶¶ 7, 16, 21, & 22; Opp'n to the Motion (the "Opposition") [ECF No. 24] 12:2-5.

[5]     Defs.' Notice of Mot. and Mot. to (1) Strike Compl. Pursuant to Cal. Code Civ. Proc. § 425.16; (2) Dismiss Compl. Pursuant to Fed. R. Civ. P. 12(b)(6); (3) Mem. of P. & A. (the "Motion") [ECF No. 19].

[6]     The Court considered the following papers:  (1) Complaint; (2) Motion (including its attachments); (3) Opposition; and (4) Reply in Supp. of the Motion (the "Reply") [ECF No. 26].

# I.  BACKGROUND

Each claim for relief in Nguy's Complaint relates to a specific category of comments or remarks, which together cohere into a specific defamatory message.[7]  Nguy characterizes the "Overall Defamatory Message" as Luu smearing him as a communist, a tax evader, and a liar.[8]  Those defamatory comments can be further classified into four sub-categories, in which Nguy alleges that Luu said that Nguy:

- scammed his customers and engaged in false advertising (the "<u>Defamatory Advertising Allegations</u>");[9]
- sympathized with communists or was a Communist himself (the "<u>Defamatory Communist Allegations</u>");[10]
- used his company, NV Foundation, to commit tax fraud by not paying sales taxes on the products that he sold online to his fans (the "<u>Defamatory Tax Fraud Allegations</u>");[11] and
- lied about making a $40,000 donation to support the creation of graves for 12,000 fallen South Vietnamese forces (the "<u>Defamatory Charitable Fraud Allegations</u>").[12]

Defendants moved to dismiss in July 2022,[13] and the Motion is fully briefed.

# II.  LEGAL STANDARD

A claim should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure when the plaintiff fails to assert a "cognizable legal theory" or the complaint contains "[in]sufficient facts . . . to support a cognizable legal

---

[7]    *See* Complaint ¶¶ 53-102.
[8]    *Id.* at ¶¶ 27-30.
[9]    *Id.* at ¶¶ 31-35.
[10]   *Id.* at ¶¶ 36-40.
[11]   *Id.* at ¶¶ 41-46.
[12]   *Id.* at ¶¶ 47-52.
[13]   *See generally* Motion.

theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  To survive a motion to dismiss, the complaint must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The claim must be pleaded with "sufficient factual matter . . . to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and that rises "above the speculative level," *Twombly*, 550 U.S. at 555.

Additionally, Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires a "short and plain statement of the claim showing that a pleader is entitled to relief," in order to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also Horosny v. Burlington Coat Factory, Inc.*, 2015 WL 12532178, at *3 (C.D. Cal. Oct. 26, 2015).  For the allegations in a complaint "to be entitled to the presumption of truth," they "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE* ex rel. *Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).  "[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

### III.  DISCUSSION

As a preliminary matter, the Court must determine which state's substantive law applies in this case.  Defendants contend that Nguy's lawsuit constitutes a Strategic Lawsuit Against Public Participation ("SLAPP") within the meaning of California's anti-SLAPP statute.  *See* Cal. Civ. Proc. Code

§ 425.16.  In contrast, Nguy maintains that Virginia law should apply because he resides there.[14]

## A.   Choice-of-Law

In diversity cases like this one, federal courts apply the choice-of-law rules of the state in which they sit.  *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014).  Here, that state is California.  Often, a choice-of-law analysis arises in the context of contracts, where a choice-of-law agreement informs the Court regarding which state's law to apply.  *See, e.g.*, *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1182 (9th Cir. 2009).  But this lawsuit involves only the tort of defamation, so there is no applicable choice-of-law agreement to analyze.  In such instances, "California follows a three-step governmental interest analysis to address conflict of laws claims and ascertain the most appropriate law applicable to the issues where there is no effective choice-of-law agreement."  *Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 919 (2001) (internal quotations and citations omitted).

"Under the first step of the governmental interest approach, the foreign law proponent must identify the applicable rule of law in each potentially concerned state and must show it materially differs from the law of California." *Id*.  Merely because "two states are involved does not in itself indicate that there is a conflict of laws or choice of law problem."  *Hurtado v. Superior Ct.*, 11 Cal. 3d 574, 580 (1974) (internal quotations omitted).  Put simply, there must be a material difference in the two states' laws.  *Id*.

Assuming there is such a difference, the Court proceeds to the second step, in which it determines "what interest, if any, each state has in having its own law applied to the case."  *Washington Mut. Bank*, 24 Cal. 4th at 920.  If both states have an interest in having its own law applied, only then does the Court

---

[14]     *See* Opposition 5:19-28; *see also* Complaint ¶ 9.

"take the final step and select the law of the state whose interests would be 'more impaired' if its law were not applied." *Id.* "In making this comparative impairment analysis, the trial court must determine the relative commitment of the respective states to the laws involved and consider the history and current status of the states' laws and the function and purpose of those laws." *Id.* (internal quotations and citations omitted).

Applying those choice-of-law rules, the Court first notes that the law of defamation in California and in Virginia appear sufficiently similar to negate any true conflict of laws. In California, the elements of a defamation claim are "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." *John Doe 2 v. Superior Ct.*, 1 Cal. App. 5th 1300, 1312 (2016). In Virginia, the elements for defamation are "(1) publication of (2) an actionable statement with (3) the requisite intent." *Schaecher v. Bouffault*, 290 Va. 83, 91 (2015) (internal quotations omitted). An "actionable" statement is "both false and defamatory." *Id.* Defamatory words are themselves those that tend to "harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* at 91–92 (internal quotations omitted). Although the precise wording and the total number of elements differ slightly, the crux of the tort is the same. The only superficial difference is the explicit reference to privileged (or unprivileged) publications in California law, which does not apply to the allegations in this case. Therefore, the Court is satisfied that there is no conflict of law as it relates to the law of defamation, as applied here.

Common law defamation, though, is not the only legal issue subject to a choice-of-law analysis. Defendants filed an anti-SLAPP motion, so the Court must compare the two states' anti-SLAPP statutes. Nguy, however, does not

1   cite the Virginia equivalent of California's anti-SLAPP Act.[15]  Rather, Nguy

2   cites only two distantly relevant provisions of Virginia's civil code:  one that

3   allows a court to consider an apology to mitigate damages, and another that

4   concerns remittance on a verdict reduced to judgment.[16]  Elsewhere, Nguy

5   makes casual references to outdated Virginia case law and Virginia state law in

6   general, but those references do not identify any equivalent anti-SLAPP

7   provision, let alone engage in a side-by-side analysis of the two statutes.[17]

8   Nguy's lackluster effort is insufficient for him to meet his burden under a

9   choice-of-law analysis.[18]  *See Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180,

10  1188 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

11  Accordingly, the Court need not proceed to the second or third steps of the

12  governmental interest analysis; California's law applies to the case.

13  **B.    California's Anti-SLAPP Act**

14          A court considering a motion to strike under California's anti-SLAPP

15  statute must engage in a two-part inquiry.  *See Vess v. Ciba-Geigy Corp. USA*, 317

16  F.3d 1097, 1110 (9th Cir. 2003).  First, a defendant "must make an initial prima

17  facie showing that the plaintiff's suit arises from an act in furtherance of the

18  defendant's rights of petition or free speech."  *Id.* (internal quotations omitted).

19

20  [15]      *See generally* Opposition (making no reference to Va. Code § 8.01-223.2).

21  [16]      *Id.* at 25:25-28 (citing Va. Code Ann. § 8.01-46) & 26:2-10 (citing
    Va. Code Ann. § 8.01-383.1).

22  [17]      *See, e.g., id.* at 6:23-24 (asserting there are "some material differences"
    without identifying what they are), 20:24-28 (citing cases from a grab bag of

23  jurisdictions, including Virginia), & 23:3-9 (discussing special damages, an
    element of defamation but not the anti-SLAPP act).

24  [18]      At a high level, California and Virginia's respective anti-SLAPP statutes
    share a similar purpose.  For example, "Virginia's anti-SLAPP law provides

25  immunity for statements regarding matters of public concern that would be
    protected by the First Amendment."  *Depp v. Heard*, 107 Va. Cir. 80 (2021)

26  (citing Va. Code § 8.01-223.2(A)) (internal quotations omitted).  Similarly,
    California's anti-SLAPP law seeks to penalize lawsuits meant solely to chill the

27  use of a "person's right of petition or free speech under the United States
    Constitution or the California Constitution in connection with a public issue."

28  Cal. Civ. Proc. Code § 425.16(b)(1).

If the defendant succeeds in making that showing, then "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." *Id.* (internal quotations omitted).

### 1.    Protected Activity

Defendants argue that Nguy's Complaint targets Luu's protected speech, which occurred during her online show.  First, Defendants say that Luu's YouTube channel satisfies the "public forum" element of the anti-SLAPP statute because it was widely accessible and open to the public.[19]  *See* Cal. Civ. Proc. Code § 425.16(e)(3) (defining an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" to include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest").  Nguy does not dispute that point. Accordingly, the Court finds that Luu's YouTube channel suffices as a public forum for the purposes of the anti-SLAPP Act. *Accord Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006) ("Web sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute.") (citing *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal. App. 4th 1228, 1247 (2005)).

Defendants also contend that Luu made her comments in connection with issues of public interest.[20]  The term "public interest" has been construed to include statements in the context of a discussion, debate, or controversy that affects a community.  *See Grenier v. Taylor*, 234 Cal. App. 4th 471, 482 (2015). The size of that community can be as small as a few thousand or even a few hundred—a quantity that is easily satisfied here. *See id.* at 482–83 (finding that a

---

[19]    Motion 5:4-16.

[20]    *Id.* at 5:17-6:18.

church community of 550 to 1,000 people qualified as a "community" for the purposes of California's anti-SLAPP Act).  Construed broadly,[21] statements regarding Nguy's political sympathies, truthfulness, and conduct (or misconduct) pertaining to his business dealings could fall under the "public interest" definition, especially when Nguy describes himself as a "well-known media figure" in the Vietnamese community.[22]

Nguy counters by invoking the commercial speech exemption.[23]  *See* Cal. Civ. Proc. Code § 425.17.  That exemption has four requirements:

> (1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17(c)(2).

*Simpson Strong-Tie Co. v. Gore*, 49 Cal. 4th 12, 30 (2010); *see also* Cal. Civ. Proc. Code § 425.17(c)(2) (defining the intended audience, *inter alia*, as "an actual or potential buyer or customer").  Nguy argues that this exemption applies because each defamatory message that Luu uttered

---

[21]     "The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process.  To this end, this section shall be construed broadly."  Cal. Civ. Proc. Code § 425.16(a).

[22]     Complaint ¶ 3.

[23]     *See* Opposition 7:24-9:9.

1  concerned Nguy's commercial operations—*i.e.*, false advertising, failing to

2  charge sale taxes, lying about NV Foundation's charitable giving, and

3  discrediting his credibility to drive away customers.[24]

4          Defendants respond that the exemption does not apply because it is

5  "implausible" that Luu and Nguy are business competitors:  he peddles in

6  "personal care products," while she sells "personal care items."[25]  The Court is

7  unpersuaded.  One need not boast a degree in marketing and economics to know

8  that Defendants make a distinction without a difference.  Moreover, Defendants

9  undercut their own argument elsewhere in their briefs.  For instance, they argue

10  that some of Luu's statements about Nguy should not be considered defamatory

11  because she and her businesses are merely advertising the differences between

12  the prices of their consumer products, which assumes the posture of a business

13  competitor.[26]  Defendants cannot have it both ways.  *See New Hampshire v.*

14  *Maine*, 532 U.S. 742, 751 (2001) (citing *Scarano v. Cent. R. Co. of N. J.*, 203 F.2d

15  510, 513 (3d Cir. 1953) (proscribing the use of "intentional self-contradiction"

16  by parties in a litigation)).

17          Defendants also contend that Luu's remarks about Nguy's alleged

18  Communist sympathies are unrelated to his business, but that characterization

19  falls flat when the Communist label remains (allegedly) potent and charged

20  within Nguy's core market segment—*i.e.*, the Vietnamese community.[27]  *See*

21  *also Lam v. Ngo*, 91 Cal. App. 4th 832, 837 (2001) (observing the outrage of the

22  Vietnamese Community in Orange County in response to the prominent

23  placement of a North Vietnamese flag and poster of Ho Chi Minh in a video

24  store).

25

---

26  [24]    *Id*. at 8:14-9:1.

27  [25]    Reply 4:17-20.

        [26]    *See, e.g.*, Motion 13:14-23.

28  [27]    *See* Complaint ¶ 5.

Determining whether the commercial speech exemption applies is a close call. Nguy alleges that his talk shows cover topics of public interest,[28] which may lead to the conclusion that Luu's online show follows a similar model, since she "learned" from him.[29] The parties' previous professional relationship makes it difficult to disentangle whether any of the specific defamatory utterances that Luu allegedly made occurred as part-and-parcel of a conversation on a matter of public interest—especially at the pleading stage. However, because of the procedural posture, the Court must construe the Complaint in favor of the non-moving party—Nguy. *See Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996) (instructing district courts to construe all factual allegations and draw all reasonable inferences from them in favor of the nonmoving party). Placing that thumb on the scale, the Court concludes that the commercial speech exemption applies to two of the five defamatory messages: namely, the Defamatory Advertising Allegations (Nguy's second claim for relief) and the Defamatory Communist Allegations and the Defamatory Tax Fraud Allegations (Nguy's fourth claim for relief).

The pleadings portray Luu and her related business entities as engaged primarily in the sale of consumer goods. Luu's remarks concerning sales taxes and Nguy's efforts to scam his audience—who make up his customer base—can reasonably be understood as a means to promote her own sales, since she is a direct competitor with a nearly identical go-to-market strategy. *See Xu v. Huang*, 73 Cal. App. 5th 802, 815–16 (2021), *review denied* (Apr. 13, 2022) (applying the commercial speech exemption where the defendant's "specific statements were . . . intended to increase sales of her services and products"). Thus, after considering "the identity of the speaker, the audience, and the

---

[28]    *See id.* at ¶ 3.

[29]    *Id.* at ¶ 6.

-11-

1   purpose of the speech," *FilmOn.com Inc. v. DoubleVerify Inc.*, 7 Cal. 5th 133, 140

2   (2019), the Court concludes that Nguy's second and fourth claims for

3   defamation are exempt from anti-SLAPP liability under the commercial speech

4   exemption.  *Accord Weiland Sliding Doors & Windows, Inc. v. Panda Windows &*

5   *Doors, LLC*, 814 F. Supp. 2d 1033, 1038 (S.D. Cal. 2011) (holding that the

6   commercial speech exemption applied to a press release by a competitor

7   involved in a patent infringement lawsuit).

8   　　　However, the Defamatory Charitable Fraud Allegations, Defamatory

9   Communist Allegations, and the Overall Defamatory Message—which appears

10  derivative of the former two allegations—exhibit a more tenuous connection

11  with Nguy's commercial speech.  In other words, those allegedly defamatory

12  messages could concern matters of public import, rather than exclusively

13  commercial matters.  For instance, Luu's statements regarding Nguy's

14  supposed Communist sympathies or his charity's misuse of funds for South

15  Vietnamese graves could plausibly be described as issues of public concern for

16  Luu's audience and the Vietnamese community writ large, *see, e.g.*, *Lam*, 91

17  Cal. App. 4th at 837, even if Luu's motivations for uttering those statements

18  were pecuniary in nature.  Since the commercial speech exemption "must be

19  narrowly construed, and the plaintiffs bear the burden of proving each of its

20  elements," the Court concludes that California's anti-SLAPP act applies to

21  Nguy's first, third, and fifth claims of defamation.  *Xu*, 73 Cal. App. 5th at 813.

22  　　　"If a complaint satisfies the provisions of the applicable exception, it may

23  not be attacked under the anti-SLAPP statute."  *Club Members for an Honest*

24  *Election v. Sierra Club*, 45 Cal. 4th 309, 316 (2008).  Because Nguy's second and

25  fourth claims satisfy the commercial speech exception under

26  Cal. Civ. Proc. Code § 425.17, the Court **DENIES** the Motion as it relates to

27  those claims.  But since the anti-SLAPP statute applies to the remaining three

28

claims, the Court proceeds to the second step of its two-step inquiry.  *See Vess*, 317 F.3d at 1110.

### 2.      **Reasonable Probability of Prevailing**

The burden now shifts to Nguy to show a reasonable probability of prevailing on his remaining defamation claims.  *See Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1122 (9th Cir. 2017).  That burden requires him to "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821 (2002).  In federal court, making out a *prima facie* case overlaps coterminously with the pleading requirements of Rule 12(b)(6).  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833–34 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018).  Requiring a plaintiff to present evidence before discovery even occurs "would improperly transform the motion to strike under the anti-SLAPP law into a motion for summary judgment without providing any of the procedural safeguards that have been firmly established by the Federal Rules of Civil Procedure."  *Id*.  Therefore, the Court evaluates each of Nguy's defamation claims to determine if they satisfy Rule 12(b)(6) and its attendant pleading requirements.

### a.      **Stating a Claim and Pleading Deficiencies**

Under the Rule 12(b)(6) standard, Defendants make two arguments. First, they contend that the Overall Defamatory Statement fails to state a claim under Rule 12(b)(6) because it is duplicative of Nguy's other claims.[30]  But that argument is persuasive only so long as Nguy's other claims for defamation fail to state a claim.  Because the Court finds that Nguy does state a claim, this argument fails.

---

[30]      Motion 7:8-11.

Second, Defendants nitpick Nguy's allegation of false advertising, saying that Nguy pleads it in an ambiguous and open-ended manner.[31]  That allegation reads as follows:  "On the May 8, 2022, episode of her show, Luu falsely accused Nguy of engaging in false advertising."[32]  While Defendants attempt to manufacture ambiguity,[33] the Court acknowledges that, to some extent, all language breeds ambiguity.  "You don't have to be Ludwig Wittgenstein or Hans-Georg Gadamer to know that successful communication depends on meanings shared by interpretive communities."  *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1767 (2020) (Alito, J., dissenting) (citing *Cont'l Can Co. v. Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund*, 916 F.2d 1154, 1157 (7th Cir. 1990)).  Since Nguy also alleges that "Luu falsely accused Nguy of scamming and taking advantage of his customers by selling products that were identical to Luu's products but at a greatly inflated price" only months earlier,[34] one need not employ considerable imagination to understand the substance of Nguy's grievance, which provides Defendants with sufficient notice of the allegedly defamatory remarks.

Third, Defendants argue that Nguy's third claim lacks specificity because the Complaint does not clearly articulate whether Luu said that Nguy was an actual Communist or merely a Communist sympathizer.  Again, the Court finds Defendants to be splitting hairs.  A "plaintiff need not plead the allegedly defamatory statement verbatim," so long as the allegedly defamatory statement is "specifically identified" and the plaintiff pleads "the substance of the statement."  *Jacobson v. Schwarzenegger*, 357 F. Supp. 2d 1198, 1216 (C.D. Cal.

---

[31]      *Id.* at 7:12-20.

[32]      Complaint ¶ 32.

[33]      *See, e.g.*, Motion 7:14-16 (asking, rhetorically, whether Nguy is "claiming that Luu actually said Plaintiff was 'engaging in false advertising?'  Or is that simply Plaintiff's opinion as to the gist of what Luu said?").

[34]      Complaint ¶ 31.

2004).  The difference between being labeled a card-carrying party member or just a sympathizer is minor in this context, where an association with Communism—at all—could provoke severe opprobrium from the community. With respect to notice, the Complaint's imprecision is immaterial when the allegation specifies that the statement was of one variety or the other.  *See* Fed. R. Civ. P. 8.

#### b.    Truth as a Defense

Next, Defendants target Nguy's allegations regarding statements on tax evasion.[35]  Defendants invoke truth as a defense:  "to state a defamation claim that survives a First Amendment challenge, plaintiff must present evidence of a statement of fact that is provably false."  *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 809 (2002).

The Court is unpersuaded because Defendants conflate and misread two separate allegations.  One allegation is that Luu accused Nguy of committing tax fraud.[36]  The other avers that, as a tax preparer, Luu should know that online sellers "are not obligated to charge sales tax on purchases by out-of-state consumers in ***circumstances*** that apply to Nguy's business."[37]  Defendants pounce on what they regard as an admission of sales tax evasion, but they ignore the open-ended disclaimer.  Without citing any tax law or regulation, Defendants contend that Luu's accusations and attendant conclusions of law are true.  But neither Defendants nor the Court know what those "circumstances" are; Nguy could be selling to residents living in states without a sales tax as far as

---

35    Motion 8:4-18.

36    *See* Complaint ¶¶ 41-45.

37    *Id*. at ¶ 46 (emphasis added).

anyone knows at this stage.[38]  Consequently, Luu could still be uttering false statements.  Truth is not yet a defense.[39]

### c.   Opinion and Hyperbole

Defendants also maintain that Luu's statements constitute opinion and hyperbole, which are considered protected speech.[40]  The Court cannot agree, at least at the pleading stage.

One threshold question in defamation lawsuits is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact.  *See Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990) (citing *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 18 (1990)).  "If the answer is no, the claim is foreclosed by the First Amendment."[41]  *Gardner v. Martino*, 563 F.3d 981, 987 (9th Cir. 2009).  As a starting point for that analysis, the Ninth Circuit adopted a three-part test:  "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is susceptible of being proved true or false."  *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995).

---

[38]     Alaska, Delaware, Montana, New Hampshire, and Oregon do not have state sales taxes.  *See* Zelda Ferguson, *Is the Tax Holiday over for Online Sales?*, 63 Tax Law. 1279, 1280 (2010).

[39]     For the same reason, the Court rejects Defendants' argument regarding engaging in protected opinions based upon disclosed facts, because the facts are not fully disclosed.  *See* Motion 8:19-9:15.

[40]     *Id.* at 9:16-13:2.

[41]     The Court recites this authority as established Circuit precedent while recognizing, as an academic point, that the First Amendment, by its text or history, does not apply to the States—at least, not without incorporation under the Fourteenth Amendment.  *See* U.S. Const. amend. I.; *see also Gitlow v. People of State of New York*, 268 U.S. 652, 666 (1925).  Since defamation is a form of libel that existed as a common law tort long before the ratification of the Constitution or the First Amendment, the Court expresses skepticism that the invocation of the First Amendment is theoretically or intellectually proper.  *See* Justice Story, *Commentaries on the Constitution* § 1874 (1833); *see also* David S. Bogen, *The Origins of Freedom of Speech and Press*, 42 Md. L. Rev. 429, 448 (1983).

1    Even though that determination may be a question of law, *see Nicosia v. De*
2    *Rooy*, 72 F. Supp. 2d 1093, 1101 (N.D. Cal. 1999) ("[w]hether a statement is an
3    assertion of fact or opinion is a question of law for the court"), it is difficult to
4    reach a decision under the three-part test when the record is comprised solely of
5    Nguy's allegations.  For instance, the Court cannot conclude that Luu's
6    statements were hyperbolic opinion without considering attendant admissible
7    evidence.  Furthermore, no conclusion appears to be foreclosed based simply
8    upon the allegations presented in the Complaint.  For example, calling Nguy a
9    Communist could be objectively false and therefore "outside of the protection of
10   the First Amendment."  *Partington*, 56 F.3d at 1153.  And while Defendants
11   insist that Luu's remarks regarding Nguy's Communist affiliations or illegal
12   sales practices were merely subjective opinions, the Court revisits the wisdom of
13   Judge Friendly, who aptly stated, "[It] would be destructive of the law of libel if
14   a writer could escape liability for accusations of [defamatory conduct] simply by
15   using, explicitly or implicitly, the words 'I think.'"  *Milkovich*, 497 U.S. at 18–19
16   (citing *Cianci v. New Times Pub. Co.*, 639 F.2d 54 (2d Cir. 1980)).  As far as the
17   Court can tell, the Complaint describes defamatory accusations that could
18   implicate objective fact.

19       **d.    California's Correction Statute**

20       Defendants try to invoke California's so-called correction statute, which
21   provides that "[i]n any action for damages for the publication of a libel in a daily
22   or weekly news publication, or of a slander by radio broadcast, plaintiff shall only
23   recover special damages unless a correction is demanded and is not published or
24   broadcast, as provided in this section."  Cal. Civ. Code § 48a(a).  "The notice
25   and demand must be served within 20 days after knowledge of the publication or
26   broadcast of the statements claimed to be libelous."  *Id*.  Defendants assert that
27   Nguy's Complaint omits any allegation showing that Nguy offered Luu the
28

-17-

opportunity to retract or correct her statements.[42]  While that may be true, Nguy responds that he has alleged that Luu's show exists for the sole purpose of driving away business from his show, rather than to broadcast any news.[43]  If Nguy's allegations are true, then California's Correction Statute—which is limited on its face to ***news*** publications and radio broadcasts—may not apply as a matter of law.

### e.    Other Defenses

Defendants argue that some of Luu's statements are neither susceptible to defamatory meanings nor directly applicable to Nguy.[44]  None of those arguments is persuasive.  For example, Defendants pluck kernels of banal statements within the Defamatory Advertising Allegations that may support their theory, but they ignore the rest.[45]  The Court cannot do the same; it must look to the statements holistically.  *See MacLeod v. Trib. Pub. Co.*, 52 Cal. 2d 536, 549 (1959).  Here, Luu allegedly made several accusations, including that Nguy is taking advantage of his customers by up-charging them on the price of goods.  Contextualizing those remarks makes it possible that Luu's statements plausibly constitute defamation, not simply "advertising."[46]  Defendants also suggest that Luu's statements concerned NV Foundation more than Nguy,[47] but the Court need not credit Defendants' characterization of Nguy's pleading.

Lastly, Defendants contend that the Defamatory Communist Allegations require proof of special damages because they are *per quod*[48]—*i.e.*, an instance of

---

[42]    Motion 14:26-16:2.

[43]    Opposition 27:17-28:2; Complaint ¶¶ 21-25.

[44]    Motion 13:3-14:25.

[45]    *See, e.g.*, Reply 12:1-4 (contending that it is not defamatory to say that a competitor sells products at a higher price).

[46]    Motion 13:16.

[47]    *See* Reply 12:19-13:5.

[48]    *See* Motion 16:3-17:2.

1  defamation that requires "knowledge of specific facts and circumstances,

2  extrinsic to the publication, which are not matters of common knowledge

3  rationally attributable to all reasonable persons." *Barnes-Hind, Inc. v. Superior*

4  *Ct.*, 181 Cal. App. 3d 377, 387 (1986).  But the Court disagrees that the

5  defamatory character of Luu's alleged statement requires any specialized

6  knowledge.  From the time of the Cold War, through the Vietnam War, to even

7  cases cited by Defendants and discussed in their Motion,[49] the general public—

8  if not the particular audience to which Luu's remarks were directed—would

9  recognize the defamatory character of the remarks, even if the severity of the

10  smear may vary from listener to listener.  Therefore, no specific pleading is

11  required.[50]  *Cf. id.* (requiring a plaintiff "specially [to] plead and prove those

12  facts" to give the reader special knowledge of the circumstances).

13       For those reasons, the Court concludes that Nguy has stated a claim on all

14  five of his counts sounding in defamation, and he has demonstrated a reasonable

15  probability of prevailing.  Nguy's Complaint both survives California's anti-

16  SLAPP statute and satisfies the pleading requirements of Rule 12(b)(6).

17  **C.    Proper Parties**

18       Luu's co-Defendants—BCS and TEFI—also try to wriggle out of this

19  case, claiming that they are improper defendants.[51]  Defendants' argument here

20  is that Nguy's allegations of an employer-employee relationship or principle-

21  agent relationship are conclusory.[52]

22

23

---

24  [49]       *See, e.g.*, *id.* at 11:9-23 (discussing the "sting" of being labeled a
Communist and citing *Lam*, 91 Cal. App. 4th at 850-51).

25  [50]       In the alternative, the Court observes that Defendants give little credit to

26  the explicit allegation in the Complaint, whereby Nguy alleges that being falsely
labeled a Communist "is, perhaps, the most damaging thing that she could say
about him" in the Vietnamese community.  Complaint ¶ 5.

27  [51]       *See* Motion 17:3-18:2.

28  [52]       *See* Reply 15:19-16:12.

-19-

The Court is not convinced, as the pleading requirement here is not particularly onerous.  Under California law, an employer "may be held liable for defamatory statements made by its employees under the doctrine of *respondeat superior*." *Rivera v. Nat'l R.R. Passenger Corp.*, 331 F.3d 1074, 1080 (9th Cir.), *amended*, 340 F.3d 767 (9th Cir. 2003).  "As long as the statement was made within the scope of employment, the principal need not know about it and the statement need not have been made for the benefit of the principal." *Id.*

Nguy alleges, on information and belief, that "Luu publishes her online show both on her own behalf and as an owner, member, manager, officer and/or director of TEFI and BCS" and that Luu engaged in the acts of defamation to "advance her own interests" and the interests of her co-Defendants.[53]  That allegation is buttressed by other assertions, dotted throughout the Complaint, that Luu sells the products of those companies on her show.[54]  If true, there may be grounds to find some type of principal-agent, alter-ego, or employer-employee relationship.

Furthermore, "as a matter of law, allegations of agency, vicarious liability, and/or *respondeat superior* are not required" as a categorical rule.  *Greenberg v. Sala*, 822 F.2d 882, 886 (9th Cir. 1987).  "A person legally responsible for an act may be alleged to have committed it without going into the theories which support that ultimate fact." *Id.*  In view of that guidance, it is premature to dismiss Nguy's claims against BCS or TEFI before Nguy has had the opportunity to engage in proper discovery and to flesh out the precise relationship between Luu and her affiliate companies.  *See Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842, 852 (N.D. Cal. 2007).

---

[53]   Complaint ¶¶ 21-24.

[54]   *See, e.g.*, *id.* at ¶¶ 7, 24, 26, & 35.

## IV.  CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.    Defendants' instant Motion is **DENIED**.

2.    Defendants are **DIRECTED** to file their respective Answers to the Complaint no later than February 17, 2023.

**IT IS SO ORDERED.**

Dated: January 31, 2023

John W. Holcomb
UNITED STATES DISTRICT JUDGE